IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL ACTION NO. 11-83-06 |
| v. : | |
| : | CIVIL ACTION NO. 13-4694 |
| MICHELE QUIGLEY : | |

SURRICK, J.                                                                                           MARCH  6th , 2014

### MEMORANDUM

Presently before the Court is Petitioner Michele Quigley's Motion to Vacate/Set Aside/ Correct Sentence under 28 U.S.C. § 2255 (ECF No. 276). For the following reasons, the Motion will be denied.

**I.    BACKGROUND**

   **A.    Procedural Background**

On February 10, 2011, a federal grand jury returned a fourteen-count Indictment charging Petitioner with conspiracy, in violation of 18 U.S.C. § 371 (Count 1); operating an illegal money transmission business, in violation of 18 U.S.C. § 1960 (Count 2); operating an illegal gambling business, in violation of 18 U.S.C. § 1955 (Count 3); transmission of wages and wagering information, in violation of 18 U.S.C. § 1084 (Counts 4 through 11); and international money laundering, in violation of 18 U.S.C. § 1956 (a)(2)(A) (Counts 12 through 14). (Indictment, ECF No. 1.) Also charged in the Indictment were co-defendants Donald Hellinger ("Hellinger"), Ronald Hellinger, Michael Weisberg, Randy Trost, and Jami Pearlman ("Pearlman"). (*Id.*)

Petitioner entered into a plea agreement with the Government. (Min. Entry, ECF No. 113; Plea Doc., ECF No. 114.) The plea agreement provided that Petitioner would plead guilty to Count 2 of the Indictment and in exchange the Government would move to dismiss the

remaining counts.  A violation of 18 U.S.C § 1960 charged in Count 2 has a statutory maximum sentence of 60 months.  On March 2, 2012, Petitioner entered a plea of guilty pursuant to the plea agreement.  On September 28, 2012, a sentencing hearing was held.  (Sept. 28, 2012 Hr'g Tr., ECF No. 274.)  The Sentencing Guidelines called for a sentence above the statutory maximum.[1]  After considering all of the relevant circumstances, a sentence well below the statutory maximum was imposed.  Petitioner was sentenced to 18 months incarceration followed by a two-year period of supervised release.  (Sept. 28 Hr'g Tr. 29.)  Petitioner was represented by Robert E. Welsh, Jr., Esquire ("Welsh") from the time of Indictment through the time of sentencing.

On August 12, 2013, Petitioner filed a pro se motion to vacate/set aside/correct sentence under 28 U.S.C. § 2255.  (ECF No. 271.)  On August 27, 2013, Petitioner's motion was stayed pending the filing of an amended motion on the appropriate forms.  (ECF No. 273.)  Petitioner filed an Amended Motion on September 16, 2013.  (Pet'r's Am. Mot., ECF No. 276.)  On September 27, 2013, the Government filed a Response.  (ECF No. 278.)  Benjamin B. Cooper, Esquire was appointed to represent Petitioner.  (ECF No. 285.)  On February 11, 2014, Petitioner filed a Memorandum of Law in Support of the Petition to Vacate/Set Aside/Correct Sentence.  (Pet'r's Mem., ECF No. 294.)  An evidentiary hearing was held on February 18, 2014 and February 19, 2014.  (ECF Nos. 296, 297.)[2]

---

[1] *See United States v. Hellinger*, No. 11-83, 2012 WL 4108931 (E.D. Pa. Sept. 19, 2012) (addressing objections to the presentence investigation report calculation of the Sentencing Guidelines and ultimately determining that the Sentencing Guidelines range for Count 2 was 108-135 months).

[2] The hearing transcripts as well as exhibits submitted by the parties are on file with the Court.

B.     **Factual Background**

On or about December 14, 2011, the Government, through Assistant United States Attorney Joel Sweet ("AUSA Sweet"), made a collective or "linked plea offer" ("Linked Offer") to all six defendants. (*See* Feb. 18, 2014 Hr'g Tr. 6-7.) The Linked Offer was made to Donald Hellinger's attorney, Fortunato Perri, Esquire. (*Id*. at 10, 23.) The Government understood that Perri was going to communicate the Linked Offer to all other defense counsel. (*Id*. at 10.) On January 6, 2012, AUSA Sweet sent a follow-up email to all defense counsel reiterating the terms of the Linked Offer. (Feb. 18 Hr'g Tr. 15-16; Pet'r's Hr'g Ex. 1.)

The Linked Offer required that all defendants plead guilty to one count of illegal gambling, in violation of 18 U.S.C. § 1955, and one count of illegal transmission of wagering information, in violation of 18 U.S.C. § 1084. (Feb. 18 Hr'g Tr. 7-8; Pet'r's Hr'g Ex. 1.) If the Linked Offer was accepted by all defendants by January 10, 2012, each defendant would receive a three-level reduction for timely acceptance of responsibility. (Pet'r's Hr'g Ex. 1.) If any defendant rejected the Linked Offer, the offer was withdrawn as to all defendants. (Feb. 18 Hr'g Tr. 13; Pet'r's Hr'g Ex. 1.)

On January 9, 2012, Pearlman's attorney, Jeffrey Miller, Esquire, sent an e-mail to AUSA Sweet stating that "for a variety of reasons, my client respectfully declines the current plea offer." (Feb. 18 Hr'g Tr. 11-12, 17, 26; Gov't's Hr'g Ex. 1.) Ten minutes later, AUSA Sweet "forwarded the e-mail to all of defense counsel and explained that the offer was terminated because it had been rejected by one of the defendants." (Feb. 18 Hr'g Tr. 17; Gov't's Hr'g Ex. 1.) AUSA Sweet testified that, although Welsh subsequently requested additional time to consider the Linked Offer, he did not respond because the offer had been terminated and he

did not have "authority to make another offer or to accept an offer on behalf of anybody." (Feb. 18 Hr'g Tr. 27-28.)

## II. DISCUSSION

### A. Hearing Testimony

At the evidentiary hearing, Petitioner testified that Welsh provided ineffective assistance because he failed to inform her of the Linked Offer, which was potentially more favorable than the plea agreement into which she entered. (Pet'r's Am. Mot. 7; Pet'r's Mem. 2.)[3] Petitioner contends that, had she accepted the Linked Offer, she would have had an offense level of 12 (Feb. 18 Hr'g Tr. 8-9), and would have faced a Sentencing Guidelines range of 6 to 12 months with an option for the Court to order a non-custodial prison sentence and impose home confinement (Pet'r's Mem. 3). Instead, Petitioner entered a plea of guilty to one count of operating an illegal money transmission business, which resulted in an offense level of 31 and a Sentencing Guideline range of 108-135 months. (*Id*.)

Petitioner testified that she did not discuss the Linked Offer with Welsh until after it had expired on January 10, 2012. She claims that she never had the opportunity to accept it. (*Id*. at 3-4; Feb. 19 Hr'g Tr. 6.)[4] Petitioner testified that if the offer had been explained to her she

---

[3] Petitioner's Amended Motion also alleged that there was a disparity in sentencing between Petitioner and Pearlman. However, Petitioner withdrew this claim in her Memorandum of law in support of this Motion. (Pet'r's Am. Mot. 6; Pet'r's. Mem. 1.)

[4] Petitioner concedes that she was included on an e-mail that was sent on Friday, January 6, 2012, detailing the terms of the Linked Offer. (Feb. 19 Hr'g Tr. 8.) However, Petitioner testified that she did not receive the e-mail until the following week because she shuts down her computer on the weekends. (*Id*.) Evidently, Petitioner does not shut her computer down on all weekends. She also testified at the hearing that on February 25, 2012, a Saturday, she received an e-mail from Welsh which included a copy of the plea agreement that was the basis of her guilty plea. She then discussed this with Welsh by telephone over the weekend and ultimately entered her guilty plea the following week. (Feb. 19 Hr'g Tr. 17-19.)

would have accepted it.  (Feb. 19 Hr'g Tr. 13.)  In addition, Petitioner asserts that if she had been made aware of the Linked Offer she would have been able to talk to Pearlman, and she thinks that she would have been able to get her "on the same page."  (Feb. 19 Hr'g Tr. 15.)[5]

Welsh testified at the hearing that he did not receive notice of the Linked Offer from Hellinger's attorney, and that he did not learn of the offer until he received AUSA Sweet's January 6 e-mail.  (Feb. 18 Hr'g Tr. 35, 38.)  Welsh testified that he left the country for central Europe on or about December 27, 2011, and that he received the e-mail on January 6, 2012, when he was flying back to the United States.  (*Id*. at 35.)[6]  On Monday, January 9, 2012, Welsh received a separate e-mail from AUSA Sweet informing him that the Linked Offer was no longer an option due to the fact that it had been rejected by Pearlman.  (Gov't's Hr'g Ex. 1.)  Welsh responded to AUSA Sweet on the same day requesting an extension of time.  (Feb. 18 Hr'g Tr. 57.)  Welsh was not certain whether he informed Petitioner of the Linked Offer before or after he requested an extension from AUSA Sweet.  (*Id*. at 43.)  Nevertheless, he was "completely confident" (*id*. at 45) that he spoke to Petitioner about the Linked Offer on either Monday, January 9 or Tuesday, January 10, 2012 (*id*. at 41).  Welsh was "confident, but less so" that his discussion with Petitioner was face-to-face.  (*Id*. at 45.)  Welsh testified that at the time of this face-to-face discussion Petitioner was already aware of the Linked Offer.  (*Id*. at 56.)  In addition, Welsh had several conversations with Petitioner about the Sentencing Guidelines in this

---

[5] It is interesting to note that Petitioner testified at the hearing that she and her co-defendants discussed this case with each other on a regular basis.  (Feb. 19 Hr'g Tr. 21-23.)

[6] He later clarified that he did not return to the country until January 8, 2012.  (Feb. 18 Hr'g Tr. 42-43; Gov't's Hr'g Ex. 1.)

case, and there was no question in his mind that Petitioner knew the implications of pleading guilty to Count 2 versus the gambling charges.  (*Id*. at 46.)

### B.     Legal Standard

Pursuant to 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct a sentence "upon the ground[s] that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).  Relief under this provision is generally available "to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *United States v. DeLuca*, 889 F.2d 503, 506 (3d Cir. 1989).

To establish a claim of ineffective assistance of counsel, a defendant must demonstrate that the representation that he received was deficient, and that the deficiency resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A claim cannot succeed if it fails under either prong of *Strickland*. *Id*. at 697.  The Supreme Court has recently held that "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012).  Thus, representation is rendered deficient if defense counsel allows an "offer to expire without advising the defendant or allowing him to consider it . . . ." *Id*.

To establish prejudice "where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of

counsel." *Id*. at 409.  In addition, defendants must "show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Id*.  Finally, "[d]efendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law." *Id*.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

### C. Analysis

The testimony of Michele Quigley and Robert Welsh is difficult to reconcile.  There is much disagreement concerning who knew about the Linked Offer and when they knew it.  However, it is clear that the Government communicated the Linked Offer to Hellinger's attorney in mid-December 2011.  Welsh testified that he did not learn about the Linked Offer until he received AUSA Sweet's January 6, 2012 e-mail.  It is unclear whether Welsh actually recieved that e-mail on January 6 or January 8.  When Welsh informed Petitioner of the Linked Offer, whether before or after it was revoked, is also the subject of conflicting testimony.  Finally, it is unclear whether Petitioner had any knowledge of the Linked Offer prior to meeting with Welsh.  Fortunately, it is not necessary for us to resolve these issues.

The Third Circuit has endorsed the Supreme Court's suggestion in *Strickland* "to consider the prejudice prong before examining the performance of counsel prong 'because this course of action is less burdensome to defense counsel.'" *United States v. Booth*, 432 F.3d 542, 546 (3d Cir. 2005) (quoting *United States v. McCoy*, 410 F.3d 124, 132 n.6 (3d Cir. 2005)).  As noted above, Petitioner must show that she would have accepted the Linked Offer, that the Linked Offer was more favorable, and that the Linked Offer would have been entered without

7

the AUSA cancelling it. Assuming that the Linked Offer was in fact more favorable, we will address the remaining two requirements.

The D.C. Circuit Court addressed a similar issue under comparable circumstances in the case of *United States v. Gaviria*, 116 F.3d 1498 (D.C. Cir. 1997). In *Gaviria*, the defendant argued that he would have accepted the government's plea offer, rather than go to trial, had his attorney not given him incorrect information regarding the Sentencing Guidelines. *Id*. at 1512. The Court accepted the defendant's assertion that he would have accepted the plea offer. *Id*. at 1513. However, the Court noted that because the offer was "'wired' to the offers to his co-defendants," the defendant also had to establish that "each of his co-defendants would have accepted their respective plea offers, or that the Government would have offered [the defendant] an unwired plea." *Id*. at 1512. Because there was evidence that the Government had previously accepted counteroffers and had also accepted an unwired plea from a co-defendant, the Court found that the defendant's ineffective assistance claim had merit. *Id*. at 1513.

In the instant case, unlike *Gaviria*, whether Petitioner would have accepted the Government's Linked Offer is open to question. Petitioner now states that she would have accepted the offer. However, in her e-mail to Welsh, Petitioner referred to the Linked Offer as "not a good one but an offer nonetheless." (Pet'r's Hr'g Ex. 3.) She attempts to explain this by indicating that she said this because the offer must not have been a good offer because Welsh never brought it to her attention. (Feb. 19 Hr'g Tr. 24-25.) This explanation is less than credible. In any event, Petitioner's claim fails even if we accept her contention that she would have taken the offer. It is undisputed that the Government's Linked Offer was conditioned upon acceptance by all defendants. It is also uncontested that the Linked Offer would be revoked if it was rejected by any of the defendants. To establish prejudice under *Frye*, Petitioner must

8

demonstrate by a reasonable probability that the Government would have waived the unanimity requirement or that all of Petitioner's co-defendants would have accepted the offer.

Petitioner does not suggest that the Government would have accepted an unlinked offer. The Government was emphatic that the Linked Offer was contingent upon acceptance by all defendants. The Government did not accept any counteroffers and in fact revoked the agreement minutes after it was rejected by Pearlman. Moreover, as AUSA Sweet explained, after revoking the offer, he had no authority to make another offer or to accept an offer on behalf of anybody.

There is also no evidence in the record to support an argument that all defendants would have accepted the Linked Offer. *See United States v. Anderson*, 705 F. Supp. 2d 1, 12 (D.D.C. 2010) (noting that the defendant had presented no evidence regarding his wife's willingness to accept a "wired" plea offer and that the standard of reasonable probability "becomes more difficult the more attenuated a claim is"); *see also United States v. Price*, 237 F. Supp. 2d 1, 5 (D.D.C. 2002) (concluding that the defendant established prejudice by showing that the court had "accepted comparable pleas of [the defendant's] co-defendants the following day"). To the contrary, Pearlman definitively rejected the Linked Offer, and as a result, it was immediately withdrawn by the Government.

Petitioner's argument that if she had been aware of the Linked Offer she would have been able to convince Pearlman to accept it is sheer speculation. As Petitioner's attorney observed during the evidentiary hearing, this Court cannot speculate as to what might have happened. (Feb. 29 Hr'g Tr. 39.) Moreover, Petitioner's argument that she "did not have the opportunity that other people might have had, which [was] to consider a plea offer, discuss it with their lawyers and decide whether everyone was going to accept it" misses the mark. (*Id*. at 39-40.) Pearlman had an attorney. She had the opportunity to discuss the Linked Offer with her attorney.

9

She rejected the offer "for a variety of reasons."  We refuse to engage in speculation as to whether Petitioner would have been able to alter a decision that was reached by Pearlman after consultation with her attorney.  *See Strickland*, 466 U.S. at 693 (noting that the defendant must "affirmatively prove prejudice"); *see also United States v. Tilley*, No. 10-691, 2011 WL 673914, at *2 (W.D. Pa. Feb. 17, 2011) ("Speculation and conjecture are insufficient to establish prejudice.").

Petitioner has failed to meet her burden of establishing prejudice.  Accordingly, her claim of ineffective assistance of counsel must fail.

### III.   CONCLUSION

For the foregoing reasons, Petitioner's Motion will be denied.  There is no basis upon which to issue a certificate of appealability.

An appropriate Order follows

                                        **BY THE COURT:**

                                        _____
                                        **R. BARCLAY SURRICK, J.**